1  Georganne W. Bradley, Esq.                    **E-filed on February 17, 2011**
   Nevada State Bar No. 1105
2  KAEMPFER CROWELL RENSHAW
   GRONAUER & FIORENTINO
3  8345 West Sunset Road, Suite 250
   Las Vegas, NV 89113
4  Telephone: (702) 792-7000
   Facsimile: (702) 796-7181
5  Email:    gbradley@kcnvlaw.com

6
   Attorneys for Debtors and Debtors-in-Possession,
7  A-NGAE1, LLC

8              **UNITED STATES BANKRUPTCY COURT**

9                    **DISTRICT OF NEVADA**

10

11  In re:                              Case No. 10-18719-MKN

12  A-NGAE1, LLC, a Nevada limited liability      Chapter 11
    company,
13
                    Debtor.           **DEBTOR'S MOTION FOR ENTRY OF AN**
14                                     **ORDER (A) SCHEDULING A COMBINED**
                                       **HEARING ON THE ADEQUACY OF THE**
15                                     **DISCLOSURE STATEMENT AND**
                                       **CONFIRMATION OF PREPACKAGED**
16                                     **PLAN OF REORGANIZATION, (B)**
                                       **APPROVING PROCEDURES FOR FILING**
17                                     **OBJECTIONS THERETO, AND (C)**
                                       **APPROVING THE FORM AND MANNER**
18                                     **OF NOTICE OF THE COMBINED**
                                       **HEARING**
19
                                       Date:   March 23, 2011
20                                     Time:   9:30 a.m.

21          A-NGAE1, LLC, a Nevada limited liability company (the "Debtor"), the debtor and

22  debtor-in-possession in the above-captioned case, hereby files this Motion for Entry of an Order

23  (A) Scheduling a Combined Hearing on the Adequacy of the Disclosure Statement and

24  Confirmation of Prepackaged Plan of Reorganization, as amended, (B) Approving Procedures for

25  Filing Objections Thereto, and (C) Approving the Form and Manner of Notice of the Combined

26  Hearing (this "Motion").

27

28

                                        - 1 -

LOSANGELES 886820 v1 (2K)

This Motion is made and based upon Sections 105(a), 105(d), 341, 1125(b) and 1125(g) of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2002, 3017, 3018 and 3020 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002, 3016, and 3018 of the Local Rules of Bankruptcy Procedure (the "<u>Local Rules</u>"), and is supported by the following documents:

(a)    Declaration of Thomas J. DeVore in Support of Motion for Entry of an Order (A) Scheduling a Combined Hearing on the Adequacy of the Disclosure Statement and Confirmation of Prepackaged Plan of Reorganization, (B) Approving Procedures for Filing Objections Thereto, and (C) Approving the Form and Manner of Notice of the Combined Hearing (the "<u>DeVore Declaration</u>"); and

(b)    Declaration of Amanda Dalton in Support of Motion for Entry of an Order (A) Scheduling a Combined Hearing on the Adequacy of the Disclosure Statement and Confirmation of Prepackaged Plan of Reorganization, (B) Approving Procedures for Filing Objections Thereto, and (C) Approving the Form and Manner of Notice of the Combined Hearing (the "<u>Dalton Declaration</u>");

(c)    Declaration of Jennifer Adams Concerning Service of Debtor's Plan of Reorganization and Related Documents (the "<u>Adams Declaration</u>"); and

(d)    Declaration of Lisa Hall Concerning Counting Ballots in Connection with Prepackaged Plan of Reorganization (the "<u>Hall Declaration</u>").

## JURISDICTION

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

On May 12, 2010 (the "<u>Petition Date</u>"), the Debtor filed a petition with this Court under Chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

As described in more detail below, the Debtor's sole substantial asset consists of vacant real property located in Clark County, Nevada (the "Property").

On or about July 11, 2006, the Debtor's parent, N.G.A. # 2, LLC (the "Parent"), borrowed $9,900,000 from a group of lenders (the "Lenders"), through Aspen Financial Services, LLC (the "Servicer") to acquire the Property. The loan is evidenced by a promissory note (the "Note") and is secured by the Property pursuant to a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (the "Deed of Trust"), each dated July 11, 2006. The Note is guaranteed by John A. Ritter (the "Guarantor"), the indirect manager of the Parent. *See* DeVore Declaration.

The Property was originally intended to be part of a master planned community located in Clark County, Nevada to be known as Kyle Canyon Gateway North (the "Community"). The Community is being developed by Focus Investment Group, LLC (the "Developer"), which also owns a majority interest in the Parent. *See* DeVore Declaration.

In the fall of 2007, the credit markets dramatically tightened. As a result, the Developer and the Parent were unable to obtain the financing required to both continue developing the Community and service the interest on the loans used to acquire the land comprising the Community, including the Note. In February of 2008, the Parent could no longer service the interest due to the Lenders and defaulted on its obligations under the Note. The Parent requested that the Lenders agree to a three-year forbearance agreement (18 month initial period with an option to extend for 18 months) pursuant to which the Developer would continue to pay development and carry costs (such as property taxes) associated with the Property, but not interest on the Note; interest would continue to accrue pending a sale of the Property at the conclusion of the development of the Community.

The market for real estate loans has not improved since the forbearance agreement was executed, and, in fact, has become more difficult. As a result, the Developer now believes that it can no longer fund all of the development and carry costs associated with the Property. Accordingly, the Developer and the Parent approached the Servicer in early 2009 and sought to negotiate a new restructuring of the Note. After substantial negotiations, the Developer, the Parent and the Servicer agreed to restructure the Note as set forth in the Plan.

- 3 -

1    In short, the parties agreed that it was in their best interests for the Parent to form the

2    Debtor as a wholly-owned subsidiary of the Parent and transfer the Property and assign the

3    obligations under the Note thereto, and for the parties to negotiate a prepackaged plan of

4    reorganization that would (a) convey the property to the Lenders in lieu of foreclosure, (b)

5    provide the Parent with a small residual interest in the Debtor in exchange for continuing to

6    manage the Property, and (c) establish a reasonable and fair mechanism for the Lenders to fund

7    the carry costs associated with the Property and make decisions concerning the Property,

8    including decisions relating to potential sales thereof. *See* DeVore Declaration.

9    The parties believed that a prepackaged plan of reorganization was the best alternative for

10    maximizing value for several important reasons. First, if the Lenders did not consensually

11    restructure the Note and, instead, foreclosed upon the Property, the Lenders would own the

12    Property as tenants-in-common, which is not feasible in light of the fact that there are over 150

13    separate Lenders and it would be difficult to agree upon a mechanism for funding future carry

14    costs on the Property or on the appropriate terms upon which the Property could be managed,

15    and, ultimately, sold. Further, it would be difficult for the majority Lenders to bind dissenters,

16    creating the potential for minority Lenders to obstruct commercially reasonable transactions to

17    the detriment of all of the Lenders. Finally, in order for the Property to preserve its value, an

18    experienced real estate developer must perform the pre-development and entitlement work that is

19    necessary and reasonable to prepare the Property for sale and, where commercially practicable, to

20    improve the entitlement and master planning status for the Property. The Lenders simply do not

21    have the expertise to do so. The Parent and its affiliates, on the other hand, do. A confirmed plan

22    of reorganization was the only manner to resolve all of these issues and maximize the value of the

23    Property. *See* DeVore Declaration.

24    The Parent, the Developer, the Debtor, and the Servicer thereafter agreed upon the terms

25    of a plan of reorganization. *See* DeVore Declaration. The terms are embodied in the Debtor's

26    Plan of Reorganization Dated December 2, 2009 (as amended as described below, the "Plan")[1].

27    The Plan resolves all of the issues described the immediately preceding paragraph.

28    ―――――――――――――――――――
[1] As described below, the Plan, and an amended version of the Plan removing Section 5.5 of the original Plan, were

LOSANGELES 886820 v1 (2K)

### The Plan

The terms of the Plan are simple. On the effective date of the Plan, the Parent's equity interests in the Debtor will be cancelled and the Lenders will receive 100% of the Class A membership interests of the reorganized Debtor. The Parent, in turn, will be issued 100% of the Class B membership interests. The reorganized Debtor will then continue to manage, preserve, entitle and, ultimately, sell the Property. Upon a sale, the Class A members (*i.e.*, the Lenders) will receive 90% of all distributions from the sale of the Property (after repayment of additional and supplemental capital contributions and a return thereon) until they receive an amount equal to the original principal amount of the Note and 70% of the distributions thereafter. The remaining distributions will be paid to the Parent as the Class B member. With the exception of property tax claimants, if any, which are unimpaired under the Plan, the Debtor has no other creditors other than the Lenders.

The Plan also transfers governance to the Lenders. After the effective date of the Plan, the reorganized Debtor will be governed by a new operating agreement (the "New Operating Agreement"), which has been attached as an exhibit to the Plan. Under the terms of the New Operating Agreement, the management of the reorganized Debtor will be vested in the Debtor's Manager and a "Steering Committee," which will be authorized to take all actions necessary and appropriate to carry out the business of the company except for certain "Major Decisions." The Steering Committee shall be initially comprised of five (5) individuals, four (4) of which shall be appointed by the Lenders and one (1) of which such shall be appointed by the Parent. Major Decisions must be approved by 51% of the Class A membership interests (*i.e.*, the membership interests held by the Lenders) and include, without limitation, any sale of the Debtor's assets, including the Property, any financing or refinancing or acquiring of material indebtedness by the reorganized Debtor, and any acquisition by the reorganized Debtor of an asset exceeding $50,000.

The day-to-day operations of the reorganized Debtor will be conducted, under the direction of the Steering Committee, by LEHM, LLC, a limited liability company established by the Parent (the "Manager") which shall perform, at the expense of the Debtor, all of the pre-

___

both filed contemporaneously with this Motion.

LOSANGELES 886820 v1 (2K)

1    development and entitlement work that is necessary and reasonable to prepare the Property for

2    sale and, where commercially practicable, to improve the entitlement and master planning status

3    of the Property.  The Manager shall also market and sell the Property, at the expense of the

4    Debtor and the direction of the Steering Committee, when commercially reasonable, subject to

5    the approval of a vote of Class A members holding at least 51% of the Class A Membership

6    Interests actually voting.

7         The operations of the reorganized Debtor on a going forward basis will be funded by

8    voluntary capital contributions from the Class A members on the terms and conditions set forth in

9    Article 4 of the New Operating Agreement.  No Class A member will be required to make any

10   additional capital contributions, although additional capital contributions, plus a reasonable rate

11   of interest will be returned on a priority basis to those Class A members that elect to contribute

12   additional capital, and Class A members who choose not to contribute will be assessed a

13   corresponding amount of interest as against their ultimate distributions after the Property is sold.

14        Finally, the Plan contains a release of claims against the Guarantor (the "Guarantor

15   Claims") by all Lenders voting in favor of the Plan.  All Lenders that either voted against the Plan

16   or did not vote at all will not be subject to such release even if the Plan becomes effective.  This

17   Court has previously expressed concern regarding the appropriateness of Section 5.5 of the Plan,

18   which includes provisions relating to the effect of Assembly Bill 513 (now codified at NRS

19   645B.340) on non-consenting Lenders.  In this case, more than 51% in amount of the outstanding

20   principal balance of the Note voted to approve the Plan.  *See* Dalton Declaration.  Accordingly,

21   the Debtor is filing, contemporaneously herewith, an amended plan of reorganization in which

22   Section 5.5 and all references to Assembly Bill 513 are deleted.  In addition, the Notice of

23   Combined Hearing that will be sent to the Lenders and others on the mailing matrix includes

24   language that explains the change made to the original Plan and its impact and also provides all

25   Lenders with the opportunity to object to such change.

26        Under the original Plan and the amended Plan, only the Lenders, who are placed into

27   Class 2, and the Parent, who is placed into Class 3, are "impaired" as that term in used in Section

28   1124 of the Bankruptcy Code.  Property tax claimants, if any, were placed into Class 1.  Class 1

1   claimants will be paid in full on the effective date of the Plan and are not "impaired". They are,

2   therefore, deemed to have accepted the Plan pursuant to Section 1126(f).

3   **The Solicitation**

4        Prior to the Petition Date, the Debtor solicited approval of the Plan as authorized by

5   section 1126(b) of the Bankruptcy Code.  The Debtor prepared a solicitation package for each of

6   the Lenders containing (a) a cover letter, (b) the Disclosure Statement for Debtor's Plan of

7   Reorganization Dated December 2, 2009 (the "Disclosure Statement")[2], (c) the Plan, (d) a ballot

8   for each of the Lenders (each, a "Ballot"), and (e) an envelope addressed to the Servicer with

9   prepaid postage for the Lenders to use to return their Ballots (collectively, the "Solicitation

10  Package") and, thereafter, sent the Solicitation package to the Servicer for mailing.  *See* Dalton

11  Declaration.  The Servicer sent a Solicitation Package to each Lender as set forth in the Adams

12  Declaration.  The Debtor believes that the solicitation was appropriate under the circumstances

13  and in accordance with Bankruptcy Rule 2002(b).

14       The Servicer created an excel spread sheet and counted the votes as they were received as

15  set forth in the Hall Declaration.  Ultimately, more than 70.51% in number and 66.95% in amount

16  of voting Lenders accepted the Plan.  Moreover, there was ample Lender participation in the

17  voting process—Lenders holding approximately 86.338% of the beneficial interests in the Note

18  returned Ballots.  The Parent also accepted the Plan.  The table set forth below contains the final

19  solicitation tally in respect of the Plan:

| Class | Number Accepting | Number Rejecting | Amount Accepting | Amount Rejecting |
|---|---|---|---|---|
| Class 1: Property Taxes | Unimpaired (Deemed to Accept) | N/A | N/A | N/A |
| Class 2: Lenders | 110 (70.51%) | 46 (29.49%) | $5,722,692 (66.95%) | $2,824,813 (33.05%) |
| Class 3: Parent | 1 | 0 | 100% | 0% |

---

[2] The Disclosure Statement was filed contemporaneously with this Motion.

1   *See* Dalton Declaration.  There are no rejecting classes in respect of the Plan.  Accordingly,

2   confirmation pursuant to section 1129(b) will not be necessary.

3   ## RELIEF REQUESTED

4   By this Motion, the Debtor requests that the Court (a) schedule a date for a combined

5   hearing (the "Combined Hearing") concerning the adequacy of the Disclosure Statement and

6   confirmation of the Plan (as amended to eliminate references to NRS §645B.340), (b) set a

7   deadline and establish procedures for objecting to the Disclosure Statement and the Plan, and (c)

8   approve the form and manner of notice of the Combined Hearing.

9   ## BASIS FOR RELIEF

10  **A.     Scheduling the Combined Hearing**

11  Bankruptcy Rule 3017(a) provides that "the court shall hold a hearing on at least 28 days'

12  notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider

13  the disclosure statement and any objections or modifications thereto."  Section 1128(a) of the

14  Bankruptcy Code provides that "[a]fter notice and a hearing, the court shall hold a hearing on

15  confirmation of the plan."  Additionally, Bankruptcy Rule 3017(c) provides that "[o]n or before

16  approval of the disclosure statement, the court shall fix a time within which the holders of claims

17  and interests may accept or reject the plan and may fix a date for the hearing on confirmation."

18  The Debtor respectfully requests that the court set a date for the Combined Hearing on the

19  earliest date that is convenient to the Court and satisfies the requirements of Bankruptcy Rule

20  3017 and Section 1128 of the Bankruptcy Code.  The Lenders and the Parent have accepted the

21  Plan.  Accordingly, the Debtor submits that there is no reason to delay consideration of the

22  Disclosure Statement and Plan.  The most sensitive and complex task required to effectuate a

23  successful reorganization—the negotiation of a consensual plan—has already been accomplished

24  in this case, and the Debtor believes that the circumstances weigh in favor of expeditiously

25  scheduling the Combined Hearing.

26  At the Combined Hearing, in addition to seeking confirmation of the Plan, the Debtor will

27  seek a ruling that the prepetition solicitation complied with section 1126(b)(2) of the Bankruptcy

28  Code.  The Debtors believe that the Disclosure Statement provided adequate information within

- 8 -

1    the meaning of section 1125(a) of the Bankruptcy Code, which defines "adequate information"

2    as:

3    information of a kind, and in sufficient detail, as far as is reasonably
     practicable in light of the nature and history of the debtor and the
     condition of the debtor's books and records, including a discussion of the
4    potential material Federal tax consequences of the plan to the debtor, any
     successor to the debtor, and a hypothetical investor typical of the holders
5    of claims or interests in the case, that would enable such hypothetical
     investor of the relevant class to make an informed judgment about the
6    plan.

7    11 U.S.C. § 1125(a)(1).

8          The Disclosure Statement in this case is extensive and comprehensive.  It contains

9    descriptions and summaries of the Property, the events leading up to this case, the Plan, the

10   solicitation procedures, the risk factors affecting the Plan, and a liquidation analysis.  In addition,

11   the Disclosure Statement was subject to extensive review by the Servicer as the agent of the

12   Lenders.  As noted above, the Lenders and the Parent have accepted the Plan.   The Debtor

13   believes that the evidence presented to this Court at and before the Combined Hearing will

14   support a finding by this Court at the Combined Hearing that the Disclosure Statement contains

15   adequate information and entry of an order confirming the Plan.

16   **B.**     **The Deadline and Procedures For Objecting to the Disclosure Statement and Plan**

17         Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to the

18   Plan.  Bankruptcy Rule 3017(a) authorizes the Court to fix a time for filing objections to the

19   adequacy of the Disclosure Statement.  Bankruptcy Rule 2002(b) requires at least 28 days notice

20   be given by mail to all creditors of the time fixed for filing objections to approval of the

21   Disclosure Statement and confirmation of the Plan.

22         The Debtor thus proposes that the Court set a date that is at least 11 calendar days prior to

23   the Combined Hearing as the last date to file objections to the Disclosure Statement and Plan (the

24   "Objection Deadline").  This date will give those parties entitled to notice more than 28 days'

25   notice of the Objection Deadline, while still affording the Debtor an opportunity to file a

26   responsive brief.  The Debtor proposes to submit its own brief in support of the Disclosure

27   Statement and Plan no later than four days before the Combined Hearing.

28

1  The Debtor further proposes that the Court require that all objections to the adequacy of

2  the Disclosure Statement or confirmation of the Plan be: (a) in writing, (b) state with particularity

3  the legal and factual basis for such objection and (c) filed by the Objection Deadline and served

4  upon (i) counsel for the Debtor, (ii) the U.S. Trustee, and (iii) those parties that have filed a

5  request for service of pleadings in this case.

6  **C.    Form and Manner of Notice of the Combined Hearing**

7  Aspen Financial Services, LLC is the Servicer of the Note. Due to privacy and other

8  concerns, the Servicer prefers not to make the addresses of the Lenders public. Accordingly, the

9  Debtor and the Servicer propose to enter into a stipulation in the form of Exhibit A. Pursuant to

10 such stipulation, the Servicer will lodge a list (the "Service List") containing the names and

11 addresses of the Lenders with the Court under seal and provide a copy to the Debtor. The Debtor

12 will then mail notice of the Combined Hearing directly to the Lenders and will file a proof of

13 service listing the names of the Lenders as well as a statement that the Debtor has served each

14 Lender at the corresponding address set forth on the Service List. The Debtor believes that the

15 aforementioned procedures are appropriate under the circumstances. Further, such procedures

16 have been approved by the Court in other Aspen cases.

17 Within 4 days following the entry of an order granting the relief requested herein, the

18 Debtor proposes to send notice (the "Notice") of the Combined Hearing to the Lenders in the

19 form attached hereto as Exhibit B. The Notice will be served on the Lenders pursuant to the

20 procedures described above, and on all other persons and entities listed on the mailing matrix

21 filed by the Debtor on the Petition Date, which list includes the Parent, the Servicer, all

22 governmental units required to be served by applicable provisions of the Bankruptcy Code and/or

23 Bankruptcy Rules, and the United States Trustee. The Debtor will also serve a copy of the

24 Disclosure Statement and Plan on the United States Trustee and the Securities and Exchange

25 Commission pursuant to Bankruptcy Rule 3017(a).

26 The Debtor believes that the attached form of Notice is appropriate because it specifically

27 notes that the Plan has been amended to eliminate Section 5.5 of the original Plan and all

28 references to NRS 645B.340, identifies the date, time and place of the Combined Hearing and the

manner for filing objections, and identifies the manner in which copies of the Plan and Disclosure Statement can be obtained.  The Debtor believes that service of the Notice as set forth herein will provide sufficient notice of the Combined Hearing and the objection requirements.

### CONCLUSION

Based on the foregoing, the Debtor respectfully requests that Court grant the relief requested herein, and any other relief that is just and proper.

DATED this 17th day of February, 2011.

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO

By: *Georganne W. Bradley*
Georganne W. Bradley, Esq. (NV # 1105)
8345 West Sunset Road, Ste. 250
Las Vegas, NV 89113

*Attorneys for Debtor and Debtor-in-Possession, A-NGAEI, LLC*

- 11 -

1

**EXHIBIT "A"**

2

**PROPOSED FORM OF STIPULATION RE: NOTICE TO SCHEDULE "D" LENDERS**

3

[See Attached]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**EXHIBIT "A' COVER SHEET**

28

Georganne W. Bradley
Nevada State Bar No. 001105
KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO
8345 West Sunset Road, Suite 250
Las Vegas, NV 89113-2092
Telephone: (702) 792-7000
Facsimile: (702) 796-7181
Email:    gbradley@kcnvlaw.com

Counsel for Debtor and Debtor-in-
Possession, A-NGAE1, LLC

**Electronically filed** _____, 2011

### UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

In re:

A-NGAE1, LLC, a Nevada limited liability
company

            Debtor,

Case No. 10-18719-mkn

**STIPULATION RE:  NOTICE TO
SCHEDULE "D" LENDERS**

The above-captioned debtor (the "Debtor") and Aspen Financial Services, LLC

("Aspen"), by and through their respective undersigned counsel, hereby agree as follows:

### RECITALS

WHEREAS, prior to the commencement of these cases, the Debtor owed $9,900,000 to

certain lenders (each a "Lender," and, collectively, the "Lenders") under the terms of a

promissory note (the "Note") dated July 11, 2006; and

WHEREAS, the Debtor is unable to repay the Note according to its terms and is one of

the proponents of a prepackaged Plan of Reorganization (the "Plan") dated July 27, 2009, as

amended on February 17, 2011 that, if confirmed, will restructure such Note as set forth therein;

and

WHEREAS, the Debtor filed a chapter 11 petition commencing this case (the "Case") on

May 12, 2010 in order to obtain confirmation of the Plan; and

- 1 -

1      WHEREAS, the names of each of the Lenders are included in Schedule "D" to the

2    Debtor's petition; and

3      WHEREAS, the Debtor and Aspen wish to establish a procedure that permits the Debtor

4    to directly serve the Lenders while also maintaining confidential the addresses of the Lenders;

5      NOW, THEREFORE, for good and valuable consideration, the receipt of which is duly

6    acknowledged, the parties agree as follows:

7                    **AGREEMENT**

8      1.    Disclosure of Information.  Promptly upon the approval of this Stipulation, Aspen

9    shall provide counsel for the Debtor, Kaempfer, Crowell, Renshaw, Gronauer & Fiorentino, with

10   a list (the "Service List") of all of the Lenders as of such date.  The Service List shall identify

11   each Lender by name, provide such Lender's name and last known mailing address and be

12   conspicuously marked "Highly Confidential."  Counsel for the Debtor shall keep confidential and

13   not disclose to others, including, without limitation, the Debtor, the Service List or any of the

14   information contained therein (collectively, the "Confidential Material"), except as permitted in

15   this Stipulation.

16      2.    Filing of Service List.  Within one week of the approval of this Stipulation, Aspen

17   shall file the Service List with the Court under seal.  The Service List may be reviewed

18   exclusively by the Court, counsel for the Debtor, and Aspen absent further order of the Court.

19   The Debtor shall not be required to incur any expense to oppose any motion to unseal the Service

20   List filed by a third party, including any of the Lenders.

21      3.    Service of Documents.  Whenever the Debtor is required to serve notices,

22   pleadings, briefs or other documents upon the Lenders in the Case, including, without limitation,

23   notices concerning the time for objecting to the Plan and the related disclosure statement, such

24   service shall be made by counsel for the Debtor by mailing the applicable notice, pleading, brief

25   or other document to each Lender at the address for such Lender listed on the Service List via

26   first class United States Mail.  Upon making such service, counsel for the Debtor shall file a proof

27   of service with the Court containing a statement that counsel for the Debtor has served the

28   applicable notices, pleadings, briefs or other documents on the Lenders at the addresses set forth

- 2 -

1  on the Service List but shall not include any such addresses on the proof of service.  Counsel for

2  the Debtor shall not use the Service List for any purpose except to serve the Lenders as permitted

3  by this paragraph 3.

4      4.    <u>Destruction of Confidential Information</u>.  After the closing of the Case, counsel for

5  the Debtor shall, upon Aspen's written request, destroy all Confidential Material, including,

6  without limitation, the Service List and all copies thereof made by counsel for the Debtor.

7      5.    <u>Subpoena</u>.  If at any time any Confidential Material is subpoenaed from counsel to

8  the Debtor by any court, administrative or legislative body, or is requested by any other person or

9  entity purporting to have authority to require the production of such information or material,

10  counsel for the Debtor shall immediately give written notice thereof to Aspen to permit it a

11  reasonable opportunity to pursue formal objections to such disclosures.  Counsel for the Debtor

12  shall not be required to expend any resources or incur any costs to object to such subpoena and

13  may comply with such subpoena when legally required to do so.

14      6.    <u>Term of Stipulation</u>.  The term of this Stipulation shall commence on the day that

15  it is approved by the Court and shall expire on the second anniversary of such approval.

16      7.    <u>Retention of Jurisdiction</u>.  The Court shall retain jurisdiction to enforce this

17  Stipulation.

18      8.    <u>Counterparts</u>.  This Stipulation may be executed in one or more counterparts, each

19  of which shall be deemed an original, but all of which together shall constitute one and the same

20  instrument.  A signature transmitted by facsimile shall be deemed an original signature for

21  purposes of this Stipulation.

22      9.    <u>Miscellaneous</u>.  This Stipulation shall be binding upon and inure to the benefit of

23  the parties hereto and their respective successors and permitted assigns.  No third party

24  beneficiaries are intended in connection with this Stipulation.  This Stipulation shall be governed

25  by and construed in accordance with the laws of the State of Nevada without regard to conflicts of

26  law principles.  Each party to this Stipulation shall bear its own attorneys fees in connection with

27  the negotiation and execution of this Stipulation and otherwise.

28

LOSANGELES 886960
v1 (2K)

1    IN WITNESS WHEREOF, the parties have caused this Stipulation to be signed and

2    executed as of _____, 2011.

3

4                                          KAEMPFER, CROWELL, RENSHAW,
                                           GRONAUER & FIORENTINO

5

6                                          By:_____
                                                Georganne W. Bradley, Esq.
7                                               8345 W. Sunset Rd., Ste. 250
                                                Las Vegas, NV 89113
8

9                                          Counsel for Debtor, A-NGAE1, LLC

10

11                                         KOLESAR & LEATHAM

12

13                                         By: _____
                                                Nile Leatham, Esq.
14                                              3320 W. Sahara Ave., # 380
                                                Las Vegas, NV 89102
15

16                                         Counsel for Aspen Financial Services, LLC

17

18

19

20

21

22

23

24

25

26

27

28

- 4 -

1

**EXHIBIT "B"**

2

<u>**PROPOSED FORM OF NOTICE OF COMBINED HEARING**</u>

3

[See Attached]

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**EXHIBIT "B' COVER SHEET**

28

1

2   Georganne W. Bradley                     **Electronically Filed on** _____ ___, 2011
  Nevada State Bar No. 1105

3   KAEMPFER CROWELL RENSHAW
  GRONAUER & FIORENTINO

4   8345 W. Sunset Road, Suite 250
  Las Vegas, NV 89113

5   Telephone: (702) 792-7000
  Facsimile: (702) 796-7181

6   Email:     gbradley@kcnvlaw.com

7   Attorneys for Debtor and
  Debtor-in-Possession

8   A-NGAE1, LLC

9 **UNITED STATES BANKRUPTCY COURT**

10 **DISTRICT OF NEVADA**

11

12 In re:                           Case No. 10-16655-MKN

13 A-NGAE1, LLC, a Nevada limited liability     Chapter 11

14 company,

                    Debtor.             **NOTICE OF**

15                           **(A)FILING OF DEBTOR'S AMENDED PLAN**
                          **OF REORGANIZATION DATED**

16                           **FEBRUARY 17, 2011; AND**

17                           **(B) HEARING TO CONSIDER ADEQUACY**
                          **OF THE DEBTOR'S DISCLOSURE**

18                           **STATEMENT AND CONFIRMATION OF**
                          **THE DEBTOR'S AMENDED PLAN OF**

19                           **REORGANIZATION DATED FEBRUARY**
                          **17, 2011**

20                           Date:

21                           Time:

22     **TO ALL CREDITORS AND THE OFFICE OF THE UNITED STATES TRUSTEE:**

23     **PLEASE TAKE NOTICE THAT**, on May 12, 2010, the above-captioned debtor (the

24 "Debtor") commenced the above-captioned chapter 11 case. The Debtor filed its plan of

25 reorganization (the "Original Plan") dated July 27, 2009 and a related disclosure statement (the

26 "Disclosure Statement") on February 17, 2011.[3] The Original Plan had been solicited prior to the

27 _____

28 [3] Capitalized terms used herein, but not defined herein, will have the meanings ascribed to such terms in the Original
Plan.

- 14 -

1  commencement of the case in the form of a "prepackaged" bankruptcy plan of reorganization and

2  was accepted by the requisite number of creditors to permit confirmation.

3      **PLEASE TAKE FURTHER NOTICE** that on February 17, 2011, the Debtor also filed

4  its Amended Plan of Reorganization Dated February 17, 2011 (the "Amended Plan"), which

5  modifies the Original Plan by removing Section 5.5 thereof.  Section 5.5 provides that "Approval

6  of the Plan by Lenders holding 51% or more of the total amount of Allowed Note Claims shall be

7  deemed to constitute an action by such Lenders to release the Guarantor from all of its obligations

8  under the Guarantee and shall be binding upon all Lenders pursuant to the terms of Chapter 645B

9  of the NRS as amended by Section 8 of AB 513."

10      **PLEASE TAKE FURTHER NOTICE** that the Debtor believes and intends for the

11  removal of Section 5.5 to make it clear that no provision of the Amended Plan, or of any order

12  confirming the Amended Plan, will affect, impair or modify any rights of any party, including the

13  Debtor, any guarantors and the Lenders under Chapter 645B of the NRS, as amended by Section

14  8 of AB 513, which has now been codified as NRS §645B.340.  As a result, such rights will be

15  unaffected by the terms of the Amended Plan or the entry of an order confirming the Amended

16  Plan.  Any determination of whether NRS §645B.340, binds non-consenting Lenders to the

17  releases granted by the releasing Lenders will be determined, if necessary, in another forum, most

18  likely in a Nevada state court.  The substance of any such determination is unclear and cannot be

19  predicted with certainty.

20      **PLEASE TAKE FURTHER NOTICE** that the removal of Section 5.5 will not affect the

21  amount or percentage of Class A Membership Interests that the Lenders will receive on account

22  of their Note Claims or *the voluntary releases granted by the Lenders that voted in favor of the*

23  *Original Plan.  If the Amended Plan is confirmed, such releases will be effective*

24  *notwithstanding the removal of Section 5.5 from the Amended Plan.*

25      **PLEASE TAKE FURTHER NOTICE** that attached hereto as **Exhibit A** is a copy of the

26  Amended Plan marked to show all changes from the Original Plan.

27      **PLEASE TAKE FURTHER NOTICE** that a hearing to determine the adequacy of the

28  Disclosure Statement and to confirm the Amended Plan (the "Combined Hearing") has been set

1    for _____, 2011 at _____ _.m. in the Foley Federal Building, 300 Las Vegas

2    Boulevard South, Las Vegas, Nevada.

3        **PLEASE TAKE FURTHER NOTICE** that the Court has set _____, 2011 as

4    the last day for objecting to the Disclosure Statement and/or the Amended Plan.  If you object to

5    the Disclosure Statement and/or the Amended Plan for any reason, including, without limitation,

6    on the grounds that Section 5.5 of the Original Plan has been removed, you must file a written

7    objection with the Court on or before such date and serve such objection upon (i) Georganne W.

8    Bradley, Kaempfer Crowell Renshaw Gronauer & Fiorentino, 8345 West Sunset Road, Suite 250,

9    Las Vegas, NV  89113-2092, (ii) the Office of the U.S. Trustee, and (iii) those parties who have

10   filed a notice of appearance and request for pleadings in this Chapter 11 case.

11       **PLEASE TAKE FURTHER NOTICE**, that if you do not object to the Amended Plan as

12   required by this Notice on or before _____, 2011, the Court may determine that

13   the Disclosure Statement is adequate and confirm the Amended Plan at the Combined Hearing

14   without further notice.

15       **PLEASE TAKE FURTHER NOTICE** that the Debtor must file any response(s) to any

16   objection(s) to the Plan on or before _____, **2011**.

17       **PLEASE TAKE FURTHER NOTICE THAT** a copy of the Disclosure Statement, a

18   copy of the Original Plan, and a clean copy of the Amended Plan may be obtained by accessing

19   PACER through the United States Bankruptcy Court website for Nevada at

20   www.nvbuscourts.gov, or by contacting Georganne W. Bradley at Kaempfer Crowell Renshaw

21   Gronauer & Fiorentino, telephone: (702) 792-7000, or by e-mail at gbradley@kcnvlaw.com.

22       **PLEASE TAKE FURTHER NOTICE THAT**, pursuant to Rule 3109 of the Local

23   Rules of Bankruptcy Procedure for the District of Nevada, the Court may consider modifications

24   to the Amended Plan at the hearing on confirmation of the Plan, and that any such modifications

25   may be incorporated in the order confirming the Plan.

26

27

28

LOSANGELES 886820 v1 (2K)

DATED this _17_ day of _____, 2011.

KAEMPFER CROWELL RENSHAW
GRONAUER & FIORENTINO

By:_____
    Georganne W. Bradley, Esq.
    8345 West Sunset Road, Ste. 250
    Las Vegas, NV 89113

Attorneys for Debtor and Debtor-in-Possession,
A-NGAE1, LLC

- 17 -