1  Georganne W. Bradley
   Nevada State Bar No. 001105
2  Kummer Kaempfer Bonner Renshaw & Ferrario
   3800 Howard Hughes Pkwy Seventh Floor
3  Las Vegas, NV 89169
   Telephone: (702) 792-7000
4  Facsimile: (702) 796-7181

5
   Proposed counsel for Debtor and Debtor-in-
6  Possession

Roberto J. Kampfner
California State Bar No. 179026
White & Case LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA 90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329

Counsel for N.G.A. #2, LLC, the parent of
the Debtor and plan co-proponent

7

8                    UNITED STATES BANKRUPTCY COURT

9                          DISTRICT OF NEVADA

10

11
   In re:                              )  Case No. [To be Determined] 10-18719-MKN
12                                      )
                                        )  Chapter 11
13 A-NGAE1, LLC, a Nevada limited liability )
   company,                             )
14                                      )  DISCLOSURE STATEMENT FOR
              Debtor and Debtor-in-Possession.) DEBTOR'S PLAN OF REORGANIZATION
15                                      )  DATED JULY 27, 2009
                                        )
16                                      )
                                        )
17                                      )
                                        )
18                                      )
                                        )
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ..................................................................................................1

II.   EXPLANATION OF CHAPTER 11 ......................................................................3
      A.   Overview of Chapter 11 .............................................................................3
      B.   Plan of Reorganization...............................................................................3
      C.   Confirmation of a Plan of Reorganization .................................................4

III.  DEFINITIONS......................................................................................................6

IV.   SUMMARY OF THE PLAN AND DISTRIBUTIONS UNDER THE PLAN............6
      A.   Summary of Plan.........................................................................................6
      B.   Distributions under the Plan .....................................................................10

V.    VOTING INSTRUCTIONS ................................................................................10

VI.   BACKGROUND AND EVENTS PRECIPITATING THE CHAPTER 11
      FILING ..............................................................................................................11

VII.  THE PLAN ........................................................................................................13
      A.   Treatment of Unclassified Claims Under the Plan....................................13
      B.   Summary of Classification and Treatment of Claims Under the Plan ........14
      C.   Implementation of the Plan ......................................................................15

VIII. CONDITIONS PRECEDENT ...........................................................................21
      A.   Condition to Confirmation .......................................................................21
      B.   Conditions to Effectiveness ......................................................................21
      C.   Waiver of Conditions ...............................................................................21
      D.   Failure of Conditions ...............................................................................21

IX.   DISPUTED CLAIMS .........................................................................................22
      A.   Objection Deadline ...................................................................................22
      B.   Prosecution of Disputed Claims................................................................22
      C.   Entitlement to Plan Distributions upon Allowance...................................22

X.    EFFECT OF CONFIRMATION .........................................................................22
      A.   Revesting of Assets...................................................................................22
      B.   Discharge. .................................................................................................23
      C.   Judgments Void.........................................................................................23

XI.   JURISDICTION .................................................................................................23

XII.  AMENDMENT AND WITHDRAWAL OF PLAN ...............................................23
      A.   Amendment of the Plan.............................................................................23
      B.   Revocation or Withdrawal of the Plan......................................................24

LOSANGELES 825098 v5 (2K)

**TABLE OF CONTENTS**
(continued)

Page

XIII.    TAX CONSEQUENCES OF THE PLAN ...................................................24

XIV.    RISK FACTORS .........................................................................................24

XV.    LIQUIDATION ANALYSIS.........................................................................26

XVI.    ACCEPTANCE AND CONFIRMATION OF THE PLAN.............................27
    A.    Acceptance of the Plan.....................................................................27
    B.    Confirmation .....................................................................................27

XVII.    MISCELLANEOUS PROVISIONS.............................................................29
    A.    Filing Objections to Claims ..............................................................29
    B.    Holding of, and Failure to Claim, Undeliverable Distributions.........29
    C.    Fractional Amounts...........................................................................30
    D.    Ex Parte Relief .................................................................................30
    E.    Binding Effect ...................................................................................30
    F.    Exculpation .......................................................................................30
    G.    Governing Law ..................................................................................30
    H.    Modification of Payment Terms ........................................................30
    I.    United States Trustee Fees..............................................................31
    J.    Computation of Time.........................................................................31
    K.    Final Decree .....................................................................................31

XVIII.    RECOMMENDATION AND CONCLUSION.................................................32

LOSANGELES 825098 v5 (2K)

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED JULY 27, 2009

# I.    INTRODUCTION

This Disclosure Statement (the "Disclosure Statement") has been prepared by the above-captioned debtor (the "Debtor"), in connection with the solicitation of acceptances of the Debtor's Plan of Reorganization Dated July 27, 2009 (the "Plan"). The purpose of this Disclosure Statement is to provide adequate information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical reasonable investor, typical of holders of Claims and equity interests, to make an informed judgment about the Plan. An acceptance or rejection of the Plan must be in writing and may only be made by completing the ballot that accompanies the Plan. In order for your vote to be counted, it must be *received* no later than 5:00 p.m. (prevailing Pacific Time) on September 5, 2009 at the following address:

Aspen Financial, LLC
Attn: Investment Counselor
7900 W. Sahara Avenue, Suite 200
Las Vegas, NV 89117

This Disclosure Statement includes (among other things), a summary of the Chapter 11 Case, a description of the Claims against and equity interests in the Debtor, a summary of the Plan, a discussion of the Plan's feasibility, and a liquidation analysis setting forth what holders of a Claim against or equity interest in the Debtor would recover if the Debtor was liquidated immediately under Chapter 7 of the Bankruptcy Code.

**UPON BANKRUPTCY COURT APPROVAL OF THE PLAN, THE PLAN WILL BE BINDING UPON ALL CREDITORS AND HOLDERS OF EQUITY INTERESTS.**

The Debtor requests that you vote promptly for the Plan upon carefully reviewing the Plan.

If you have any questions concerning the procedures for voting, or any questions concerning your treatment under the Plan, please contact Amanda Dalton of Focus Property Group, LLC at (702) 242-4949.

**THE PLAN IS THE GOVERNING DOCUMENT. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN CONTROL.**

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED JULY 27, 2009

THE FINANCIAL PROJECTIONS CONTAINED IN THIS DISCLOSURE STATEMENT REPRESENT THE DEBTOR'S ESTIMATES OF FUTURE EVENTS BASED ON CERTAIN ASSUMPTIONS MORE FULLY DESCRIBED BELOW, SOME OR ALL OF WHICH MAY NOT BE REALIZED.  THE FINANCIAL INFORMATION IS UNAUDITED.  NONE OF THE FINANCIAL ANALYSIS CONTAINED IN THIS DISCLOSURE STATEMENT IS CONSIDERED TO BE A "FORECAST" OR "PROJECTION" AS TECHNICALLY DEFINED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS.  THE USE OF THE WORDS "FORECAST," "PROJECT," OR "PROJECTION" WITHIN THE DISCLOSURE STATEMENT RELATES TO THE BROAD EXPECTATIONS OF FUTURE EVENTS OR MARKET CONDITIONS AND QUANTIFICATIONS OF THE POTENTIAL RESULTS UNDER THOSE CONDITIONS.

THE PROFESSIONALS REPRESENTING THE DEBTOR HAVE RELIED UPON INFORMATION PROVIDED BY THE DEBTOR IN CONNECTION WITH THE PREPARATION OF THIS DISCLOSURE STATEMENT AND HAVE NOT INDEPENDENTLY VERIFIED ALL OF THE INFORMATION CONTAINED HEREIN.  THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS, OR TAX ADVICE.  YOU SHOULD CONSULT WITH YOUR OWN LEGAL COUNSEL AND ACCOUNTANT AS TO LEGAL, TAX, AND RELATED MATTERS CONCERNING YOUR CLAIM OR INTEREST.

EACH CREDITOR AND EQUITY INTEREST HOLDER IS URGED TO REVIEW THE PLAN IN FULL BEFORE VOTING ON THE PLAN TO ENSURE A COMPLETE UNDERSTANDING OF THE PLAN AND THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS AND OTHER PARTIES IN INTEREST AND FOR THE SOLE PURPOSE OF ASSISTING THEM IN MAKING AN INFORMED DECISION ABOUT THE PLAN.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS IN CONJUNCTION WITH THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN OTHER THAN THE INFORMATION AND

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED JULY 27, 2009

REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT OR IN THE BALLOTS. IF GIVEN OR MADE, ANY SUCH INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR.

## II.    EXPLANATION OF CHAPTER 11

### A.    Overview of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11, a debtor in possession attempts to reorganize its business for the benefit of the debtor, its creditors and other parties in interest. The Debtor has not yet commenced bankruptcy proceedings. However, the Debtor expects to file a "prepackaged" bankruptcy after the solicitation of votes on the Plan is completed if all of the Classes of creditors set forth below approve the Plan.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor as of the date the petition is filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee. Here, the Debtor fully expects to remain in possession of its assets throughout its Chapter 11 Case.

The filing of a chapter 11 petition triggers the automatic stay provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides, among other things, for an automatic stay of all attempts to collect or recover prepetition claims from the debtor or to otherwise interfere with, or exercise control over, the debtor's property or business. Except as otherwise ordered by the Bankruptcy Court, the automatic stay remains in full force and effect until the effective date of a confirmed plan of reorganization.

### B.    Plan of Reorganization

The formulation of a plan of reorganization is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying claims against and interests in the debtor. **In this case, the Debtor is soliciting its Plan prior to commencing its bankruptcy proceeding. In such a case, section 1125 of the Bankruptcy Code requires that a debtor comply with applicable non-bankruptcy law in connection with its solicitation of the Plan. If no applicable non-bankruptcy**

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED JULY 27, 2009

1    law exists, section 1126(b) provides that a solicitation must comply with the disclosure

2    requirements set forth in section 1125 of the Bankruptcy Code concerning disclosure

3    statements.  The Debtor does not believe that there is an applicable non-bankruptcy law

4    governing the solicitation of this Plan.  Accordingly, this Disclosure Statement is presented to

5    holders of Claims against the Debtor to satisfy the requirements of section 1125 of the

6    Bankruptcy Code in connection with the Debtor's solicitation of votes on the Plan.  In short, the

7    Debtor believes that this Disclosure Statement provides information of a kind, and in sufficient

8    detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the

9    condition of the Debtor's books and records, that would enable a hypothetical investor to make an

10   informed judgment about the Plan.

11          The Debtor expects to file the Plan concurrently with the commencement of its bankruptcy

12   case and your vote on the Plan will be binding, even after the Debtor's bankruptcy case has been

13   commenced.

14          Although referred to as a plan of reorganization, a plan may provide for anything from a

15   complex restructuring of a debtor's business and its related obligations to a simple liquidation of the

16   debtor's assets.  In either event, upon confirmation of the plan, it becomes binding on the debtor and

17   all of its creditors and equity holders, and the obligations owed by the debtor to such parties are

18   compromised and exchanged for the obligations specified in the plan.

19          C.      **Confirmation of a Plan of Reorganization**

20          If all classes of claims and interests accept a plan of reorganization, the bankruptcy court may

21   confirm the plan if the bankruptcy court independently determines that the requirements of section

22   1129 of the Bankruptcy Code have been satisfied.  Section 1129 of the Bankruptcy Code sets forth

23   the requirements for confirmation of a plan and, among other things, requires that a plan meet the

24   "best interests" of creditors test and be "feasible."  The "best interests" test generally requires that

25   the value of the consideration to be distributed under a plan to the holders of claims or interests in

26   the debtor is not less than those parties would receive if the debtor were liquidated pursuant to a

27   hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code.  Under the "feasibility"

28   requirement, the court generally must find that there is a reasonable probability that the debtor will

LOSANGELES 825098 v5 (2K)

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED JULY 27, 2009

be able to meet its obligations under its plan without the need for further financial reorganization. **With the exception of approval of the Plan by all impaired classes, the Debtor believes that the Plan satisfies all of the applicable requirements of section 1129(a) of the Bankruptcy Code, including, in particular, the best interests of creditors test and the feasibility requirement.**

Chapter 11 does not require that each holder of a claim or interest in a particular class vote in favor of a plan of reorganization in order for the bankruptcy court to determine that the class has accepted the plan. Rather, a particular class will be determined to have accepted the plan if the court determines that the plan has been accepted by a majority in number and two-thirds in amount of those claims actually voting in such class. **In the present case, only the holders of Claims who actually vote will be counted as either accepting or rejecting the Plan.**

In addition, classes of claims or interests in the debtor that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. Conversely, classes that are to receive no distribution under the plan are conclusively deemed to have rejected the plan. Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class. A class is "impaired" if the legal, equitable, or contractual rights associated with the claims or equity interests of that class are modified in any way under the plan. Modification for purposes of determining impairment, however, does not include curing defaults and reinstating maturity or payment in full in cash on the effective date of the plan.

The bankruptcy court may also confirm a plan of reorganization even though fewer than all classes of impaired claims and equity interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or equity interests, the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a rejecting class of claims or equity interests if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED JULY 27, 2009

value, as of the effective date of the plan, in an amount equal to the allowed amount of such claim or such other treatment as accepted by the holder of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive or retain on account of such junior claim or equity interest any property at all unless the senior class is paid in full.

A plan does not "discriminate unfairly" against a rejecting class of claims or equity interests if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims or equity interests, and (b) no senior class of claims or equity interests is to receive more than 100% of the amount of the claims or equity interests in such class. **The Debtor believes that the Plan has been structured so that it will satisfy the foregoing requirements as to any rejecting Class of equity interests, and can therefore be confirmed, if necessary, over the objection of such of Class. The Debtor will not attempt to confirm the Plan over the objection of any creditor Class.**

## III.    DEFINITIONS

All capitalized terms used herein, but not defined herein shall have the meaning given to such terms in the Plan. If a term is not defined herein or in the Plan, but is defined in the Bankruptcy Code, such term has the meaning given to that term in the Bankruptcy Code unless the context of the Disclosure Statement requires otherwise. References to a code section are references to the Bankruptcy Code, except as otherwise stated.

## IV.    SUMMARY OF THE PLAN AND DISTRIBUTIONS UNDER THE PLAN

This Section provides a summary of the Plan and of how Claims against and equity interests in the Debtor are classified and treated under the Plan. The descriptions set forth below are merely summaries and, in the event of an inconsistency with the Plan, the terms of the Plan will govern. Please refer to Section VII hereof for a more detailed discussion of the Plan.

### A.    Summary of Plan

The Plan is not complicated. In short, the Debtor is the owner of certain real property located in the State of Nevada (the "Property"). The Property serves as collateral for a promissory note (the "Note") in the amount of $9,900,000 issued by the Debtor's parent for the benefit of certain

lenders (the "Lenders"). Under the Plan, the Property will be returned to the Lenders in full satisfaction of the Note and in lieu of foreclosure. Such return will occur by cancelling the current equity interests in the Debtor currently held by the Debtor's parent (the "Parent") and issuing "Class A Membership Interests" in the reorganized Debtor to the Lenders on a pro rata basis. In exchange for the cancellation of its common equity, the Parent will receive "Class B Membership Interests" in the Debtor, which will permit the Parent to receive only limited distributions from the Debtor, as described in more detail below. The purpose of the Plan is to effectively transfer ownership of the Property to the Lenders without the necessity and expense of a foreclosure as well as to provide a structure and mechanism to protect and improve the value of the Property for the Lenders.

After the effective date of the Plan (the "Effective Date"), the Debtor will be governed by a new operating agreement (the "New Operating Agreement"), which has been attached as an exhibit to the Plan. Under the terms of the New Operating Agreement, the management of the new limited liability companies will be vested in a steering committee (the "Steering Committee"), which shall be authorized to take all actions necessary and appropriate to carry out the business of the company except for certain "Major Decisions." The Steering Committee shall be comprised of five (5) individuals, four of which shall be appointed by the Lenders and one of which such shall be appointed by the Parent. Major Decisions must be approved by 51% of the Class A Membership Interests (i.e., the membership interests held by the Lenders) voting on the particular Major Decision and include approval of any sales of company assets, including the Property, any financing, refinancing or acquiring of material indebtedness by the company and any acquisition by the company of an asset exceeding $50,000.

The day-to-day operations of each new limited liability company shall be conducted, under the direction of the Steering Committee, by a limited liability company established by the Parent (the "Manager"), which shall perform, at the expense of the Debtor, all of the pre-development and entitlement work that is necessary and reasonable to prepare the Property for sale and, where commercially practicable, improve the entitlement and master planning status of the Property. The Manager shall also market and sell the Property, at the expense of the Debtor, when commercially reasonable, subject to the approval of either the Steering Committee or a vote of Class A members

LOSANGELES 825098 v5 (2K)

1    holding at least 51% of the Class A Membership Interests actually voting depending on the amount

2    of the sale.

3    　　　　The operations of the Debtor shall be funded by voluntary capital contributions from the

4    holders of Class A Membership Interests, which shall be requested by the company on a pro rata

5    basis as needed (each an "Additional Capital Contribution"). In the event that some Class A

6    members fail to make a capital contribution when requested, the remaining Class A members shall

7    be entitled to contribute the difference to the Debtor (each a "Supplemental Capital Contribution").

8    In the event that the Supplemental Capital Contributions provided by the Class A members are

9    insufficient to cover the shortfall, the Debtor may seek additional debt financing, including secured

10   financing, from third parties to cover such shortfalls. Such financing may be approved by the

11   Steering Committee so long as all third-party financing, including such financing, does not exceed

12   10% of the original principal amount of the Note. All third-party financing over and above such

13   threshold must be approved by a vote of 51% of the Class A Membership Interests participating in

14   such vote.

15   　　　　Upon the sale of Property, the proceeds shall be paid first to reimburse the makers of the

16   Supplemental Capital Contributions for any such amounts contributed plus an 8% annual return,

17   second, to the makers of Additional Capital Contributions for any such amounts contributed plus an

18   8% annual return, third, until the holders of Class A Membership Interests have received the "Initial

19   Class A Amount," (a) 90% to the holders of Class A Membership Interests on a pro rata basis;

20   provided that the pro rata distributions of the Class A members shall be adjusted so that the makers

21   of Supplemental Capital Contributions receive an additional 12% annual return at the expense of the

22   Class A members that did not make an Additional Capital Contribution, and (b) 10% to the Parent,

23   and, fourth, 70% to the holders of Class A Membership Interests on a pro rata basis and 30% to the

24   Parent. The Initial Class A Amount shall be an amount equal to the original principal amount of the

25   Note on the Effective Date and shall be increased on a monthly basis at a rate of 1% per annum until

26   such amount is paid from the proceeds of a sale.

27   　　　　The Class A Membership Interests shall be subject to certain restrictions on transfer set forth

28   in the New Operating Agreement.

1    Further, Aspen Financial Services, LLC ("Aspen") shall serve as the administrative agent (in

2  such capacity, the "Administrative Agent") for the Lenders and shall be paid an annual fee equal to

3  .5% of the Allowed Claims of the Lenders for performing such services.

4      *Finally, the Plan contains a release of Claims against the Guarantor under the Guarantee*

5  *(the "Guarantor Claims") by all Lenders voting in favor of the Plan. Accordingly, a vote in favor*

6  *of the Plan by a Lender also constitutes a release of the Guarantor Claims by such Lender*

7  *whether or not such Lender recovers the total amount of its Allowed Claim under the Plan. All*

8  *Lenders rejecting the Plan will be deemed to have voted against such release and will not be*

9  *deemed to have released the Guarantor Claims, whether or not the Plan becomes effective, unless*

10  *Lenders holding 51% or more of the interests in the Note (the "Majority Lenders") vote in favor*

11  *of the Plan. In such instance, Chapter 645B of the Nevada Revised Statues provides that the*

12  *release granted by the Majority Lenders shall be binding upon all of the Lenders and all Lenders*

13  *shall be deemed to have released the Guarantor regardless of whether or not such Lender*

14  *accepted the Plan to the fullest extent permitted by Nevada law.*

15      The Debtor believes that the Plan is in the best interest of creditors, including the members

16  of the Lenders and urges all creditors to vote for the Plan. The alternative to the Plan is for the

17  Lenders to foreclose on the Property. In such event, the Lenders will own the Property as tenants in

18  common and will have no feasible legal structure for maintaining and selling the parcels to third

19  parties. Indeed, in all likelihood, the Lenders will be unable to effectively sell the Property after a

20  foreclosure, which will substantially reduce recoveries to Lenders. On the other hand, under the

21  Plan, the Lenders will take title to the Property in a manner that provides a clear governance

22  structure that includes the ability to market and sell the Property in an efficient manner and at a time

23  when returns to the Lenders will be maximized. The Debtor believes that the combination of an

24  efficient management structure and the ability to delay the sale of the parcels until the real estate

25  market has recovered will maximize value for all stakeholders. Consequently, the Debtor urges you

26  to vote for the Plan.

27

28

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED JULY 27, 2009

LOSANGELES 825098 v5 (2K)

## B. Distributions under the Plan

The following is a summary of the Distributions under the Plan. Claims (except Administrative Claims and Claims of Professionals) against and equity interests in the Debtor will receive Distributions under the Plan as set forth below:

| Classification | Type of Claim | Treatment |
|---|---|---|
| Class 1 | Property Tax Claims<br><br>**Estimated amount of Property Tax Claims:** $13,591.30 | On the Effective Date, holders of Allowed Property Tax Claims will receive Cash in the amount of their Allowed Property Tax Claims plus interest at the applicable statutory rate. |
| Class 2 | Note Claims<br><br>**Estimated amount of Note Claims:** $9,900,000 | On the Effective Date, each holder of an Allowed Note Claim shall receive, in complete satisfaction of such Claim, its Pro Rata Share of 100% of the Class A Membership Interests. Such membership interests shall have all of the rights and obligations set forth in the New Operating Agreement. |
| Class 3 | Old Membership Units | On the Effective Date, the Old Membership Units shall be exchanged for the Class B Membership Interests. Such membership interests shall have all of the rights and obligations set forth in the New Operating Agreement. |

## V.    VOTING INSTRUCTIONS

**IT IS IMPORTANT THAT YOU EXERCISE YOUR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN.** If you are or may be entitled to vote on the Plan, you have been sent a ballot (the "Ballot") and instructions for voting with this Disclosure Statement. You should read the Ballot carefully and follow the instructions contained therein. Please use only the Ballot sent to you with this Disclosure Statement.

To simplify the voting procedure, Ballots have been sent only to all known holders of Claims and equity interests, including Disputed Claims to which objections may be filed once the Chapter 11 Case has been commenced. The Bankruptcy Code and the Bankruptcy Rules provide that only the holders of Allowed Claims (or Claims which are deemed Allowed) and holders of Allowed equity interests are entitled to vote on the Plan. The Bankruptcy Court may temporarily allow a Disputed Claim to which an objection has been filed for purposes of voting on the Plan. Therefore, although the holders of Disputed Claims to which an objection has been filed will receive Ballots,

1    these votes will not be counted unless the Bankruptcy Court temporarily allows such Claims for

2    purposes of voting on the Plan.

3        If a party in interest is a member of more than one Class, it will receive a Ballot for each

4    Class. **IF YOU ARE A MEMBER OF MORE THAN ONE CLASS, YOU MUST FILL OUT**

5    **AND RETURN ALL BALLOTS SENT TO YOU FOR YOUR VOTE TO COUNT IN EACH**

6    **CLASS.**

7        **AN ACCEPTANCE OR REJECTION OF THE PLAN MAY BE VOTED BY**

8    **COMPLETING THE BALLOT THAT ACCOMPANIES THE PLAN AND THE**

9    **DISCLOSURE STATEMENT, AND RETURNING IT NO LATER THAN 5:00 P.M.**

10    **(PREVAILING PACIFIC TIME) ON SEPTEMBER 5, 2009 TO:**

11                        Aspen Financial, LLC
                     Attn: Investment Counselor
12                   7900 W. Sahara Avenue, Suite 200
                     Las Vegas, NV 89117

13        **IF YOUR BALLOT IS NOT RETURNED BY SUCH TIME, IT MAY NOT BE**

14    **CONSIDERED. BALLOTS WHICH ARE RETURNED BUT NOT PROPERLY**

15    **EXECUTED OR WHICH FAIL TO INDICATE EITHER ACCEPTANCE OR REJECTION**

16    **OF THE PLAN WILL NOT BE COUNTED.**

17    **VI.    BACKGROUND AND EVENTS PRECIPITATING THE CHAPTER 11 FILING**

18        The Debtor's only asset is the Property. The Property was originally acquired by the Parent

19    of the Debtor in 2006. Such acquisition was financed through the Note, which is dated as of July 11,

20    2006, in the original principal amount of $9,900,000 and was issued by the Parent for the benefit of

21    the Lenders. The Note is secured by the Property pursuant to a Deed of Trust, Assignment of Rents,

22    Security Agreement and Fixture Filing (the "Deed of Trust") dated as of July 11, 2006. The

23    Property was acquired as part of a plan to acquire land to develop and entitle a master planned

24    community commonly known as Kyle Canyon Gateway North (the "Community"). Such

25    community is being developed by Focus Investment Group, LLC (the "Developer"), which also

26    owns a majority interest in the Parent.

27

28

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED JULY 27, 2009

LOSANGELES 825098 v5 (2K)

In the fall of 2007, the credit markets dramatically tightened. As a result, the Developer and the Parent were unable to obtain the financing required to both continue developing the Community and service the interest on the loans used to acquire the land comprising the Community, including the Note. As a result, in February of 2008, the Parent ceased paying interest on the Note, and, instead, requested that the Lenders agree to a three-year forbearance agreement, pursuant to which the Developer would continue to pay development and carry costs in respect of the Community, but not interest on the Note, which would accrue pending a sale of the Property at the conclusion of the development of the Community.

The market for real estate loans has not improved since the forbearance agreement was executed, and, in fact, has become more difficult. As a result, the Developer now believes that it can no longer fund all of the development and carry costs associated with the Property. Accordingly, the Developer and the Parent approached the Administrative Agent in early 2009 and sought to negotiate a new restructuring of the Note. After substantial negotiations, the Developer, the Parent and the Administrative Agent agreed to restructure the Note as set forth in the Plan.

In short, and as noted above, pursuant to the Plan, the Property will be transferred to the Debtor immediately prior to commencing this case and, on the Effective Date, the Lenders will be provided with 100% of the Class A Membership Interests in the Debtor. The Parent (and current holder of the equity in the Debtor) will be issued Class B Membership Interests. Under the Plan, the Lenders will receive 90% of all distributions from the sale of the Property (after repayment of additional capital calls and a return thereon) until their Allowed Claims are paid in full and 70% of all distributions thereafter. The Debtor's new manager, with assistance from the Developer, will continue to develop the Community and entitle the Property, but all costs incurred in connection therewith, including the carrying cost of the Property will be paid by the Debtor through voluntary additional capital contributions made by the Lenders or otherwise borrowed from third-parties.

The Developer, the Parent, the Debtor and the Administrative Agent each agree that a prepackaged plan of reorganization is the best method for accomplishing the restructuring of the Property. Most importantly, the parties do not believe that state law provides a mechanism to effectively realize value from the Property. Indeed, under state law, the Lenders would likely

foreclose upon the Property, which would leave them holding the Property as tenants in common. Under those circumstances, no legal framework would exist to fund carry costs and marketing expenses and for selling the Property. A prepackaged plan of reorganization solves these structural issues. The Developer, the Parent, the Debtor and the Administrative Agent urge you to vote in favor of the Plan.

## VII.    THE PLAN

A copy of the Plan accompanies this Disclosure Statement as <u>Exhibit A</u>. The following summary of the material provisions of the Plan is qualified in its entirety by the specific provisions of the Plan, including the Plan's definitions of certain terms used below. The following is intended only to provide a general description of the Plan. For more specific information concerning the Plan, the Plan should be referenced. For an overview of the Plan, please refer to Section IV above.

### A.    Treatment of Unclassified Claims Under the Plan

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including, without limitation, Claims for Professional Fees, are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims are instead treated separately in accordance with Article 2 of the Plan and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

#### 1.    Administrative Claims

Administrative Claims other than Claims for Professional Fees shall be paid in full in Cash by the reorganized Debtor on the Effective Date, except as otherwise permitted by the Bankruptcy Code or as otherwise agreed by the reorganized Debtor and the holders of any such Administrative Claims. All requests for payment of Administrative Claims, other than requests for payment of Claims for Professional Fees, must be filed by the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor or the reorganized Debtor.

#### 2.    Professional Fees

Each Person seeking an award by the Bankruptcy Court of Professional Fees: (a) must file a final application for allowance of compensation for services rendered and reimbursement of

-13-

expenses incurred through the Effective Date within thirty (30) days of the Effective Date; and (b) if the Bankruptcy Court grants such an award, it must be paid in full in Cash in such amounts as are allowed by the Bankruptcy Court as soon thereafter as practicable. All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the requirements of the Bankruptcy Code, the Bankruptcy Rules and any applicable guidelines and with all of the terms and conditions set forth in any applicable order of the Bankruptcy Court, including, without limitation, the Confirmation Order, and all other orders governing payment of Professional Fees.

### 3.    Post-Effective Date Professional Fees

All Professional Fees for services rendered in connection with the Chapter 11 Case and the Plan after the Effective Date are to be paid by the reorganized Debtor upon receipt of an invoice for such services, or on such other terms to which the reorganized Debtor and the relevant Professional may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

### B.    Summary of Classification and Treatment of Claims Under the Plan

In accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except those Claims receiving treatment as set forth in Section VII(A) above) and holders of equity interests are placed in the Classes described below for all purposes, including, without limitation, voting on, Confirmation of, and Distribution under, the Plan:

| Class 1 | Property Tax Claims | Unimpaired, deemed to accept |
| Class 2 | Note Claims | Impaired, entitled to vote |
| Class 3 | Old Membership Units | Impaired, entitled to vote |

The treatment of Claims against and equity interests in the Debtor under the Plan is set forth below and is consistent with the requirements of Section 1129(a) of the Bankruptcy Code.

### 1.    Class 1--Property Tax Claims

Class 1 consists of Property Tax Claims. Property Tax Claims are unimpaired by the Plan; consequently, the holders of Property Tax Claims are deemed to have accepted the Plan. On the Effective Date, each holder of an Allowed Property Tax Claim shall receive a single Cash payment

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED JULY 27, 2009

equal to the sum of (a) its Allowed Property Tax Claim and (b) all accrued postpetition interest calculated at the rate required by applicable nonbankruptcy law.

> 2.    **Class 2--Note Claims**

Class 2 consists of the Note Claims. Note Claims are impaired by the Plan; consequently, the holders of Note Claims are entitled to vote on the Plan. On the Effective Date, each holder of a Note Claim shall receive, in complete satisfaction of such Claim, its Pro Rata Share of 100% of the Class A Membership Interests. Such membership interests shall have all of the rights and obligations set forth in the New Operating Agreement.

> 3.    **Class 3 -- Old Membership Units**

Class 3 consists of the Old Membership Units. Old Membership Units are impaired by the Plan; consequently, the holders of Old Membership Units are entitled to vote on the Plan. On the Effective Date, the Old Membership Units shall be exchanged for the Class B Membership Interests. Such membership interests shall have all of the rights and obligations set forth in the New Operating Agreement.

**C.    Implementation of the Plan**

The following section describes the means for implementing the Plan.

> 1.    **Issuance of Class A Membership Interests.** On the Effective Date, the Old Membership Units shall be cancelled and the Debtor shall issue, without further order of the Bankruptcy Court or need for corporate approval, the Class A Membership Interests and the Class B Membership Interests as provided for in the Plan.

> 2.    **Adoption of Operating Agreement.** On and after the Effective Date and without further order of the Bankruptcy Court or need for corporate approval, the Debtor shall adopt the New Operating Agreement and such agreement shall supercede all other operating agreements in respect of the Debtor. A copy of the New Operating Agreement is attached as Exhibit A to the Plan. The New Operating Agreement shall provide that upon the sale of Property, the proceeds shall be paid first to reimburse the makers of the Supplemental Capital Contributions for any such amounts contributed plus an 8% annual return, second, to the makers of Additional Capital Contributions for any such amounts contributed plus an 8% annual return, third, until the holders of Class A

-15-

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED JULY 27, 2009

Membership Interests have received the Initial Class A Amount, (a) 90% to the holders of Class A

Membership Interests on a pro rata basis; provided that the pro rata distributions of the Class A

members shall be adjusted so that the makers of Supplemental Capital Contributions receive an

additional 12% annual return at the expense of the Class A members that did not make an Additional

Capital Contribution, and (b) 10% to the Parent, and, fourth, 70% to the holders of Class A

Membership Interests on a pro rata basis and 30% to the Parent.

        3.     **Management.** Without limiting the generality of paragraph 2 above, on and

after the Effective Date, the Debtor shall be managed by the Manager and the Steering Committee

and such New Operating Agreement may be amended as permitted by Nevada state law without

further order of the Bankruptcy Court. The entry of the Confirmation Order shall ratify and approve

all actions taken by the Debtor prior to the date thereof.

      The Manager is an affiliate of the Parent, an insider of the Debtor. The Manager will also be

an affiliate of the Developer. Nevertheless, the Debtor believes that appointing an affiliate of the

Parent and the Developer to manage the day-to-day operations of the Debtor is consistent with

public policy and is in the best interests of the Lenders because the Manager, in collaboration with

the Developer, has the experience and expertise to complete pre-development work in respect of the

Property and to market the Property in a manner that maximizes value for the Lenders. Moreover,

the Manager, through the Developer, is familiar with the Property and will be able to perform its

function as manager without a substantial learning curve. Finally, the Steering Committee (which

will be controlled by individuals appointed by the Lenders) will provide an important check upon the

activities of the Manager and the holders of Class A Membership Interests will have final authority

to approve Major Decisions, including any sale of the Property.

      The Steering Committee shall consist of four individuals appointed by the Lenders holding

interests in the reorganized Debtor and one individual appointed by the Parent. The Debtor believes

that such an arrangement is consistent with public policy and is in the best interests of the Lenders

because it will allow the Lenders to effectively oversee management of the Debtor without the

constant need to consult the entire Lender constituency. Indeed, the formation of the Steering

Committee is one of the primary advantages of the Plan. Absent the Steering Committee, any action

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED JULY 27, 2009

LOSANGELES 825098 v5 (2K)

1    taken by the Lenders would require the vote of literally hundreds of Lenders. The identity and

2    affiliations of each member of the Steering Committee will be disclosed prior to the Confirmation

3    Hearing.

4                4.    **Release of Liens.** Pursuant to section 1142(b) of the Bankruptcy Code, the

5    entry of the Confirmation Order shall constitute a direction by the Bankruptcy Court to the

6    Administrative Agent and the Lenders to execute the documents necessary to release the Deed of

7    Trust and any Liens granted thereby shall be deemed satisfied as of the Effective Date without

8    further order of the Bankruptcy Court.

9                5.    **Certain Provisions Affecting Lenders.** *Under Nevada state law, "[e]xcept*

10    *as otherwise provided by law or by agreement of the parties, and regardless of the date the*

11    *interests were created, if a beneficial interest in a loan belongs to more than one natural person,*

12    *the holders of 51% or more of the outstanding principal balance may act on behalf of all the*

13    *holders of the beneficial interests of record on matters which require the action of the holders of*

14    *the beneficial interests in the loan." Accordingly, approval of the Plan by the Majority Lenders*

15    *shall be deemed to constitute an action by such Lenders to release the Guarantor Claims and such*

16    *release shall be binding upon all Lenders pursuant to the terms of Chapter 645B of the NRS as*

17    *amended by Section 8 of AB 513.*

18            If the Plan is accepted by a sufficient number of Lenders to comply with the requirements of

19    the Bankruptcy Code (*i.e.*, one-half in number and two-thirds in amount of holders of Allowed Note

20    Claims actually voting to accept the Plan), but not by enough Lenders to comply with Nevada state

21    law, then only Lenders voting to accept the Plan shall be deemed to have released the Guarantor

22    Claims and the Lenders who vote against the Plan shall be deemed to have retained their rights

23    against the Guarantors under Nevada law.

24                6.    **Certain Tax Provisions.** Pursuant to section 1146(a) of the Bankruptcy

25    Code, the making or delivery of an instrument of transfer as part of a transaction authorized by the

26    Plan, including, without limitation, any transfers of Property shall not be taxed under any law

27    imposing a stamp tax or similar tax.

28

-17-

7.     **Issuance of New Membership Units.**  Pursuant to section 1145(a) of the Bankruptcy Code, section 5 of the Securities Act of 1933 and any state or local law requiring registration for the offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security shall not apply to the issuance of the Class A Membership Interests and the Class B Membership Interests.  In addition, pursuant to section 1125(e) of the Bankruptcy Code, any Persons that solicit the acceptance or rejection of the Plan, in good faith and in compliance with the Bankruptcy Code, or that participate, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale or purchase of a security, offered or sold under the Plan, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities.

8.     **Post-confirmation matters.**  Except as otherwise set forth in the Plan, on and after the Effective Date, without need for further action by the members or managers of the Debtor, and without further order of the Bankruptcy Court, the Debtor shall be appointed estate representative under section 1123 of the Bankruptcy Code and shall be solely responsible for and shall have authority to: (a) make all Distributions required to be made on or after the Effective Date to the holders of Allowed Claims; (b) settle, resolve and object to Claims; (c) pay all fees payable under 28 U.S.C. § 1930; (d) file any post Confirmation reports required by the Bankruptcy Code or the Bankruptcy Court; (e) retain, employ and utilize such Professionals as may be necessary without further approval of the Bankruptcy Court; (f) do all things necessary and appropriate to fulfill the duties and obligations of the Debtor under the Plan, the Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules; (g) move for the entry of a Final Decree and prepare and file any pleadings as may be required by the Bankruptcy Court in connection with the Final Decree and the closing of the Chapter 11 Case and (h) dissolve the Debtor upon the entry of a Final Decree.  The Debtor, in its capacity as estate representative, shall comply with all withholding and reporting requirements imposed upon it by any Governmental Unit under applicable law and all Distributions shall be subject to such withholding and reporting requirements, if any.

LOS ANGELES 825098 v5 (2K)

9.    **Certain Distribution Provisions Concerning the Lenders.**  Distributions to the Lenders on account of the Class A Membership Interests shall be made by the Administrative Agent.  The Administrative Agent shall make such distributions in accordance with any prepetition agency or other agreements between the Administrative Agent and the Lenders and the Administrative Agent shall receive the Service Fee provided for in the New Operating Agreement in connection with such Distributions.  In connection with such Distributions, the entry of the Confirmation Order shall constitute a direction for the Administrative Agent to deliver the Deed of Trust to the Debtor on the Effective Date for cancellation.

10.    **Release of Claims by Releasing Lenders.**  On the Effective Date, each of the Lenders voting in favor of the Plan (each a "Releasing Lender") and the Administrative Agent, on behalf of itself and each of its agents, successors, assigns and representatives of any kind (collectively, the "Releasing Lender Parties"), shall and hereby does voluntarily forever release and discharge the Debtor, any other obligors under the Note and any applicable guarantees, and each of such Person's respective agents, successors, assigns and representatives of any kind (collectively, the "Debtor Parties") from any and all claims, demands, causes of action and rights of every kind, nature or character arising or existing on or before the Effective Date arising out of or in any way related to the Note, the Guarantee or the Property; whether absolute, inchoate or contingent; whether determined or undetermined, known or unknown, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of any kind, character or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise.

LOSANGELES 825098 v5 (2K)

1    Lenders that do not vote, or vote against the Plan shall not be considered Releasing Lenders

2   under the Plan, however such Lenders shall be deemed to have released the Guarantor Claims if the

3   Plan is accepted by the Majority Lenders.

4       **11.    Release of Claims by Debtor Parties.**  On the Effective Date, each Debtor

5   Party hereby forever releases and discharges each Releasing Lender Party from any and all claims,

6   demands, causes of action and rights of every kind, nature or character arising or existing on or

7   before the Effective Date arising out of or in any way related to the Note, the Guarantee or the

8   Property; whether absolute, inchoate or contingent; whether determined or undetermined, known or

9   unknown, proven or unproven; whether held individually, jointly, or jointly and severally; whether

10  arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation,

11  contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation,

12  relief, protection, punishment or any other remedy or result of any kind, character or nature; whether

13  based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any

14  breach of any contract or upon any other grounds or upon any other theory whatsoever; whether

15  asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or

16  other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any

17  jurisdiction, in any court or other forum or with any federal, state, county, municipal or other

18  governmental authority, agency or official; and whether arising at law, in equity or otherwise.

19      **12.    Corporate Authority.**  The entry of the Confirmation Order shall constitute

20  authorization for the Debtor to take or cause to be taken all corporate actions necessary or

21  appropriate to implement all provisions of, and consummate, the Plan, and the Plan Documents prior

22  to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed

23  to have been authorized and approved by the Bankruptcy Court without further approval, act or

24  action under any applicable law, order, rule, or regulation, including, without limitation, any action

25  required by holders of Old Membership Units, including, among other things, the issuance of Class

26  A Membership Interests and Class B Membership Interests, and the adoption of the New Operating

27  Agreement under the Plan.

28

LOSANGELES 825098 v5 (2K)

**13.    Avoidance Actions.**  The Debtor does not believe that the estate has any viable avoidance actions and, therefore, does not intend to pursue any such actions after the Effective Date.

## VIII.  CONDITIONS PRECEDENT

### A.    Condition to Confirmation

It is a condition precedent to Confirmation that the Bankruptcy Court enter a Confirmation Order in form and substance reasonably acceptable to the Debtor.

### B.    Conditions to Effectiveness

The following are conditions precedent to the occurrence of the Effective Date:

(a)    the Confirmation Date shall have occurred;

(b)    the Confirmation Order shall be a Final Order, except that the Debtor reserves the right to cause the Effective Date to occur notwithstanding the pendency of an appeal of the Confirmation Order under circumstances that such parties believe would moot such appeal;

(c)    no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, remain pending;

(d)    the Debtor shall have received all approvals necessary or appropriate to substantially consummate the Plan and enter into the related Plan Documents; and

(e)    each and every Plan Document shall be fully executed and in form and substance satisfactory to the Debtor.

### C.    Waiver of Conditions

Conditions to Confirmation and the occurrence of the Effective Date may be waived in whole or in part by the Debtor at any time without notice, an order of the Bankruptcy Court, or any further action other than proceeding to Confirmation and consummation of the Plan.

### D.    Failure of Conditions

If the Effective Date shall not occur, the Debtor and all other parties in interest shall retain all their rights and remedies as if the Plan had not been proposed.  Among other things, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver of any Claims

against or equity interests in the Debtor or (b) prejudice in any manner the rights of the Debtor or the Lenders.

## IX.    DISPUTED CLAIMS

### A.    Objection Deadline

Any objections to Administrative Claims and all other Claims made after the Effective Date shall be filed and served on the holders of such Administrative Claims and Claims not later than thirty (30) days after the Effective Date or such later date as may be approved by the Bankruptcy Court via ex parte request.

### B.    Prosecution of Disputed Claims

The Debtor, as estate representative, may object to the allowance of Claims and Administrative Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with the Plan.

### C.    Entitlement to Plan Distributions upon Allowance

Notwithstanding any other provision of the Plan, no Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim, unless and until such Disputed Claim becomes an Allowed Claim. When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim shall thereupon become entitled to receive Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

## X.    EFFECT OF CONFIRMATION

### A.    Revesting of Assets

Subject to the provisions of the Plan and the Confirmation Order, the property of the Estate, including, without limitation, the Property, shall vest in the Debtor on the Effective Date. As of the Effective Date, all such property, including, without limitation, the Property, shall be free and clear of all Claims, Liens and equity interests, including, without limitation, any claims arising from the Note, any Liens arising from the Deed of Trust and the Old Membership Units to the fullest extent permitted by section 1141(c) of the Bankruptcy Code, except as otherwise provided in the Plan or

the Confirmation Order. From and after the Effective Date, the Debtor shall be free of any restriction imposed by the Bankruptcy Court, the Bankruptcy Code and the Bankruptcy Rules, other than the obligations set forth in the Plan, or the Confirmation Order.

**B.      Discharge**

Except as provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and equity interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims. Except as provided in the Plan or the Confirmation Order, Confirmation discharges the Debtor and the reorganized Debtor from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based on such debt has accepted the Plan.

**C.      Judgments Void**

Any judgment obtained before or after the Confirmation Date in any court other than the Bankruptcy Court shall be null and void as a determination of the liability of the Debtor with respect to any debt treated by the Plan.

## XI.      JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, and as more particularly set forth in the Plan, the Bankruptcy Court shall retain and have all authority and jurisdiction as is allowed under the Bankruptcy Code and other applicable law to enforce the provisions, purposes, and intent of the Plan.

## XII.      AMENDMENT AND WITHDRAWAL OF PLAN

**A.      Amendment of the Plan**

At any time before the Confirmation Date, the Debtor may alter, amend, or modify the Plan under section 1127(a) of the Bankruptcy Code; provided that the Debtor may not materially modify the treatment of any Class that has accepted the Plan without the consent of such Class. After the Confirmation Date and before substantial consummation of the Plan as defined in section 1101(2) of

LOSANGELES 825098 v5 (2K)

1  the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute

2  proceedings in the Bankruptcy Court to remedy any defect or omission in, or reconcile any

3  inconsistencies in the Plan or the Confirmation Order, and to implement such action as may be

4  necessary to carry out the purposes and effects of the Plan so long as such proceedings do not

5  materially and adversely affect the treatment of holders of Claims under the Plan; provided, that

6  prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or

7  applicable order of the Bankruptcy Court.

8    **B.    Revocation or Withdrawal of the Plan**

9        The Debtor reserves the right to revoke or withdraw the Plan at any time and for any reason

10  before the Confirmation Date. Without limiting the generality of the foregoing, the Debtor may

11  withdraw the Plan in the event that any Class does not accept the Plan or if there is substantial

12  opposition to the Plan from any Lender notwithstanding such acceptance. If the Plan is withdrawn

13  or revoked, then the Plan shall be deemed null and void, and nothing contained in the Plan or any

14  Plan Documents shall be deemed a waiver of any Claims by or against the Debtor or any other

15  Person in any further proceedings involving the Debtor.

16    **XIII.   TAX CONSEQUENCES OF THE PLAN**

17    **THE PLAN MAY HAVE SIGNIFICANT TAX CONSEQUENCES FOR ALL**

18  **CREDITORS AND EQUITY HOLDERS OF THE DEBTOR. ACCORDINGLY, EACH**

19  **HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT**

20  **WITH HIS OR HER TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND**

21  **FOREIGN TAX CONSEQUENCES OF THE PLAN.**

22    **THE DEBTOR AND THE REORGANIZED DEBTOR MAY WITHHOLD ALL**

23  **AMOUNTS REQUIRED BY LAW TO BE WITHHELD FROM PAYMENTS TO HOLDERS**

24  **OF ALLOWED CLAIMS.**

25    **XIV.   RISK FACTORS**

26        The restructuring of the Debtor contemplated by the Plan involves a degree of risk, and this

27  Disclosure Statement contains forward-looking statements that involve risks and uncertainty. The

28  Debtor's actual results could differ materially from those anticipated in such forward-looking

LOSANGELES 825098 v5 (2K)

statements as a result of a variety of factors, including those set forth in the following risk factors and elsewhere in this Disclosure Statement. **Holders of Claims and equity interests should consider carefully the following factors, in addition to the other information contained in this Disclosure Statement, before submitting a vote to accept or reject the Plan. The below risk factors should not be regarded as constituting the only risks involved in connection with the Plan and its implementation.**

The Plan contains several material risks, including, without limitation:

- Under the Plan, the carry costs of the Property must be voluntarily borne by the Lenders receiving Class A Membership Interests in the Debtor. If the Lenders are unwilling to contribute sufficient capital to pay such costs, the Debtor, the Manager and the Developer may not be able to effectively market and sell the Property.

- Major Decisions of the Debtor, including, without limitation, the sale of assets for less than the original principal amount of the Note and incurrence of debt in an amount in excess of 10% of the original principal amount of the Note can be authorized by a vote of 51% of the Class A Membership Interests actually participating in such vote. As a result, the Debtor may sell the Property and incur debt under the circumstances set forth in this paragraph over the objection of an individual Lender and there is no guarantee that an individual Lender will be able to block any particular sale.

- If the Lenders holding Class A Membership Interests are unwilling to fund the carry costs of the Property, the Debtor may, subject to the terms of the New Operating Agreement, seek financing to pay such costs and may secure such financing with the Property. Thereafter, the lender providing such financing may foreclose upon the Property if the Debtor is unable to meet its debt obligations to such lender.

- There is no guarantee that liquidity in the real estate market in southern Nevada will improve in the future. As a result, the Property may lose value after the Effective Date, impairing the value of the Class A Membership Interests issued to the Lenders under the Plan.

-25-

- Although the Developer believes that it can weather the downturn in the real estate market, such an outcome is not guaranteed. If the Developer fails, it will not be able to effectively market the Property and the Property could lose value.

- Under the Plan, the Parent and the Developer are prepared to pay the cost of the plan process only so long as such cost is reasonable. If there are lengthy objections to the Plan, such parties may refuse to continue to fund the Debtor. In such a case, the Plan will likely be withdrawn and the Debtor's bankruptcy case may be converted to chapter 7. In such event, the Plan will not be confirmed and the Lenders will lose the benefit of the Plan.

## XV.    LIQUIDATION ANALYSIS

Section 1129(a)(7) of the Bankruptcy Code requires that a holder of a Claim in an impaired Class receive or retain under the Plan not less than the holder would receive or retain on account of the Claim if the debtor were liquidated under Chapter 7 of the Bankruptcy Code. This test is often referred to as the "best interest of creditors" test.

To apply the "best interests" test, the Bankruptcy Court must first calculate the aggregate dollar amount that would be generated from a liquidation of the Debtor's assets in a hypothetical liquidation on the Effective Date under Chapter 7, including the amount of cash and other tangible assets held by such Debtor and the value of any projected recoveries on actions against third parties and other intangible assets held by such Debtor (the "Liquidation Value"). The Liquidation Value must then be reduced by the costs of liquidation, including administrative costs of the Chapter 7 estates and compensation to the Chapter 7 trustees and other professionals retained by the trustees (the "Liquidation Costs"). After estimating the Liquidation Value and the Liquidation Costs, the Bankruptcy Court must ascertain the potential Chapter 7 recoveries by Creditors and then compare those recoveries with the distributions offered under the Plan to determine if the Plan is in the "best interests" of Creditors in each Class. Attached hereto as Exhibit B is a spreadsheet (the "Spreadsheet") setting forth the Liquidation Value, the Liquidation Costs and the expected return to unsecured creditors in a Chapter 7 case.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED JULY 27, 2009

1  The Debtor retained Valemount Capital ("Valemount") to provide a valuation of the

2  Property. Valemount and its employees have extensive experience in the Las Vegas real estate

3  market and have estimated that the rapid liquidation of the Property in a chapter 7 would generate

4  values equal to between $304,590 and $456,885. Valemount has also estimated that the price of the

5  Property, if properly marketed and held over the next five to seven years, would be between

6  $9,746,880 and $14,620,320, a considerable increase in value. The Spreadsheet attached hereto

7  adopts these values to produce the liquidation analysis set forth therein.

8  As described with more particularity on Exhibit B, the Debtor believes that the Plan provides

9  a distribution far in excess of what would be achieved in a hypothetical Chapter 7 liquidation.

10  ### XVI.   ACCEPTANCE AND CONFIRMATION OF THE PLAN

11  The following is a brief summary of the provisions of the Bankruptcy Code relevant to

12  acceptance and confirmation of a plan of reorganization. Holders of Claims and equity interests are

13  encouraged to review the relevant provisions of the Bankruptcy Code with their own attorneys.

14  **A.    Acceptance of the Plan**

15  This Disclosure Statement is provided in connection with the solicitation of acceptances of

16  the Plan. The Bankruptcy Code defines acceptance of a plan of reorganization by a Class of Claims

17  as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number,

18  of the Allowed Claims of that Class that have actually voted or are deemed to have voted to accept

19  or reject a plan. The Bankruptcy Code defines acceptance of a plan of reorganization by a Class of

20  interests as acceptance by at least two-thirds in amount of the allowed interests of that Class that

21  have actually voted or are deemed to have voted to accept or reject a plan.

22  The Debtor will not go forward with the Plan unless each Class of creditors accepts the Plan.

23  **B.    Confirmation**

24  Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold

25  a hearing on confirmation of a plan. Notice of the Confirmation Hearing regarding the Plan has been

26  provided to all known holders of Claims and equity interests or their respective representatives along

27  with this Disclosure Statement. The Confirmation Hearing may be adjourned from time to time by

28

1   the Bankruptcy Court without further notice except for an announcement of the adjourned date made

2   at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.

3       Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to

4   confirmation of a plan. Any objection to confirmation of the Plan must be in writing, must conform

5   with the Bankruptcy Rules, must set forth the name of the objecting party, the nature and amount of

6   Claims or equity interests held or asserted by that party against the Debtor's Estate or property, and

7   the specific basis for the objection. Such objection must be filed with the Bankruptcy Court,

8   together with a proof of service, and served on all parties and by the date set forth on the notice of

9   the Confirmation Hearing.

10      At the Confirmation Hearing, the Debtor will request that the Bankruptcy Court determine

11  that the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. If the Bankruptcy

12  Court so determines, the Bankruptcy Court will enter an order confirming the Plan. The applicable

13  requirements of Section 1129 of the Bankruptcy Code are as follows:

14      • The Plan must comply with the applicable provisions of the Bankruptcy Code;

15      • The Debtor must have complied with the applicable provisions of the Bankruptcy
        Code;

16
        • The Plan must have been proposed in good faith and not by any means forbidden
17        by law;

18      • Any payment made or promised to be made by the Debtor under the Plan for
          professional services or for costs and expenses in, or in connection with, the
19        Chapter 11 Case, or in connection with the Plan, must have been disclosed to the
          Bankruptcy Court, and any such payment made before Confirmation of the Plan
20        must be reasonable, or if such payment is to be fixed after Confirmation of the
          Plan, such payment must be subject to the approval of the Bankruptcy Court as
21        reasonable;

22      • The Debtor must have disclosed the identity and affiliates of any individual
          proposed to serve, after Confirmation of the Plan, as a director, officer, or voting
23        trustee of the Debtor under the Plan. Moreover, the appointment to, or
          continuance in, such office of such individual, must be consistent with the
24        interests of holders of Claims and equity interests and with public policy, and the
          Debtor must have disclosed the identity of any insider that the reorganized Debtor
25        will employ or retain, and the nature of any compensation for such insider;

26      • With respect to each Class of impaired Claims or equity interests, either each
          holder of a Claim or equity interest of such Class must have accepted the Plan, or
27        must receive or retain under the Plan on account of such Claim or equity interest,
          property of a value, as of the Effective Date of the Plan, that is not less than the

28

LOSANGELES 825098 v5 (2K)

amount that such holder would receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code;

- Each Class of Claims or equity interests must have either accepted the Plan or not be impaired under the Plan;

- Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Allowed Administrative Claims will be paid in full on the Effective Date;

- If a Class of Creditors is impaired under the Plan, at least one impaired Class of Claim must have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such Class; and

- Confirmation of the Plan must not be followed by the liquidation, or the need for further financial reorganization of the Debtor or any other successor.

## XVII. MISCELLANEOUS PROVISIONS

### A.    Filing Objections to Claims

From and after the Effective Date, the Debtor, in its capacity as estate representative, may litigate to Final Order, propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

### B.    Holding of, and Failure to Claim, Undeliverable Distributions

All Distributions other than Distributions to the Lenders are to be made to the holder of each Allowed Claim by the Debtor as estate representative at the address of such holder listed on the Schedules or proof of claim filed by such holder at the time of such Distribution. Distributions to the Lenders are to be made by tendering such Distributions to the Administrative Agent for the benefit of the Lenders at the last written address provided by the Administrative Agent to the Debtor for such purpose. If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Debtor is notified of such holder's then current address, at which time all required Distributions shall be made to such holder. Undeliverable Distributions shall be held by the Debtor until such Distributions are claimed. All Claims for undeliverable Distributions must be made within ninety (90) days following a Distribution. After such date, all unclaimed Distributions shall be allocated pro rata to the members of the Class related to such Distribution notwithstanding any federal or state escheat laws to the contrary.

LOSANGELES 825098 v5 (2K)

### C.    Fractional Amounts

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.

### D.    Ex Parte Relief

Upon *ex parte* motion by the Debtor after the Confirmation Date, the Bankruptcy Court may enter such order and further orders as may be necessary or appropriate to instruct and direct the Debtor and others, and to facilitate the Distributions contemplated in the Plan.

### E.    Binding Effect

The Plan shall be binding on, and shall inure to the benefit of, the Debtor and the holders of all Claims and equity interests and their respective successors and assigns.

### F.    Exculpation

The Debtor, the Administrative Agent, the Parent, the Manager and the Developer and their respective officers, directors, agents, managers, shareholders or attorneys shall not be liable for any actions or omissions taken or not taken in connection with or arising out of the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.

### G.    Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of the Debtor, all Creditors and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada, without giving effect to Nevada's choice of law provisions.

### H.    Modification of Payment Terms

At any time after the Effective Date, the Debtor may modify the treatment of any Allowed Claim or equity interest in any manner adverse to the holder of such Claim or equity interest only

LOSANGELES 825098 v5 (2K)

with the prior written consent of the holder whose Allowed Claim or equity interest treatment is being adversely affected.

**I.    United States Trustee Fees**

The reorganized Debtor shall pay all quarterly fees payable to the Office of the United States Trustee after Confirmation in connection with the Chapter 11 Case, consistent with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and 28 U.S.C. § 1930(a)(6).

**J.    Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

**K.    Final Decree**

After the Estate is fully administered, the Debtor shall file an application for a Final Decree, and shall serve the application on the U.S. Trustee, together with a proposed Final Decree.

*[remainder of page intentionally left blank]*

LOSANGELES 825099 v5 (2K)

## XVIII. RECOMMENDATION AND CONCLUSION

The Debtor has analyzed different scenarios and believes that the Plan will provide for a larger distribution to holders of Claims than would otherwise result if an alternative restructuring plan were proposed or if the Debtor was liquidated under Chapter 7. In addition, any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in potentially smaller distributions to the holders of Claims and equity interests. Accordingly, the Debtor recommends confirmation of the Plan and urges all holders of Allowed Claims to vote to accept the Plan and to indicate acceptance by returning their Ballots so as to be received by no later than the voting deadline.

Dated: July 27, 2009                        Respectfully submitted,

                                            A-NGAE1, LLC, a Nevada limited liability company
                                            By:    LEHM, LLC, its Manager

                                            By: _____
                                                   John A. Ritter, its Manager

LOSANGELES 825098 v4 (2K)          DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
                                   OF REORGANIZATION DATED JULY 27, 2009